IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **PHYLLIS TURNER** | § | **PLAINTIFF** |
| | § | |
| **V.** | § | **1:05CV288LG-RHW** |
| | § | |
| **FRESENIUS MEDICAL CARE NORTH** | § | |
| **AMERICA AND LIBERTY ASSURANCE** | § | |
| **CO. OF BOSTON** | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THIS COURT are Cross-Motions for Summary Judgment filed by the Defendants [16], Fresenius Medical Care North America ("Fresenius") and Liberty Assurance Company of Boston ("Liberty Life"), and by the Plaintiff [21], Phyllis Turner ("Turner"). The Plaintiff contends that the Defendants abused their discretion in denying her claim for long term disability benefits under the Fresenuis Medical Care North America Long Term Disability Plan. The Defendants contend that the Plan Administrator's decision to terminate the Plaintiff's long term disability benefits was not arbitrary or capricious, and therefore, must be upheld. For the reasons set forth below, the Court finds that the Defendants did not abuse their discretion in denying Plaintiff's claim. The Defendants' Motion should therefore be granted, and the Plaintiff's Motion should be denied.

### FACTS AND PROCEDURAL HISTORY

In 1995, the Plaintiff, Phyllis Turner, began her employment as a Registered Nurse with National Medical Care Inc. d/b/a Fresenius Medical Care North America. As an employee of Fresenius, she was eligible for and did participate in Fresenius's Long Term Disability Plan (the "Plan"). In 1999, Turner was diagnosed with Hepatitis C and Chronic Fatigue

Syndrome.  Turner applied for disability benefits under the Plan.  In 2000, Turner began receiving disability benefits.  In April 2002, Liberty Life notified Turner that she was no longer eligible for disability benefits under the terms of the Plan because she was capable of engaging in an occupation.  Turner appealed the decision.  After reviewing Turner's appeal, Liberty Life maintained its denial of her claim.  Turner appealed Liberty Life's decision directly to Fresenius.  On May 4, 2004, Fresenius affirmed Liberty Life's decision to deny long term benefits.

On February 25, 2005, Turner filed a complaint in the Circuit Court of Jackson County, Mississippi.  The Defendants removed the case to this Court on June 13, 2005.  On December 1, 2005, Turner filed an amended complaint, contending that the Defendants abused their discretion in denying her claim for long term disability benefits.  On February 23, 2006, the Defendants filed their motion for summary judgment asserting that Liberty Life did not abuse its discretion in denying Turner's claim.  Turner likewise filed a motion for summary judgment claiming that the Defendants abused their discretion in denying her claim.

## DISCUSSION

STANDARD FOR MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56:

FED. R. CIV. P. 56 permits any party to a civil action to move for a summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law.  A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate

the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325(1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Catrett*, 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986).

ERISA STANDARD OF REVIEW:

The parties agree that this case is governed by the Employee Retirement Income Security Act, and must be reviewed under the abuse of discretion standard. *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 269-70 (5th Cir. 2004), *quoting Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998). Under the abuse of discretion standard, the Court must "'analy[ze] whether the plan administrator acted arbitrarily or capriciously.'" *Lain v. UNUM Life Ins. Co. of America*, 279 F.3d 337, 342 (5th Cir. 2002) (citations omitted). "A decision is arbitrary when made 'without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Lain*, 279 F.3d at 342, *quoting Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.,* 97 F.3d 822, 828 (5th Cir. 1996). The Court's review is limited to the evidence before the administrator when the claim was denied. *Dowden v. Blue Cross & Blue Shield of Texas, Inc.*, 126 F.3d 641, 644 (5th Cir. 1997). Thus, the Court's inquiry is essentially limited to "whether the record adequately supports the administrator's decision." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 298 (5th Cir. 1999).

"An administrator's decision to deny benefits must be 'based on evidence, even if

3

disputable, that clearly supports the basis for its denial.'" *Lain*, 279 F.3d at 342, *quoting Vega*, 188 F.3d at 299.  If the administrative record does not include "some *concrete evidence* . . . that supports the denial of the claim, . . . the administrator abused its discretion." *Lain*, at 342. "The law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, *not* that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Ellis*, 394 F.3d at 273, *citing Meditrust Fin. Servs. Corp. v. Sterling Chem., Inc.,* 168 F.3d 211, 215 (5th Cir. 1999). "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ellis*, at 273, *citing Deters v. Sec'y of Health, Educ. & Welfare,* 789 F.2d 1181, 1185 (5th Cir. 1986) (*citing Richardson v. Perales,* 402 U.S. 389, 401 (1971))*.*

THE DISABILITY DETERMINATION PROCESS:

The Disability Risk Management Agreement between Fresenius and Liberty Life provides in pertinent part as follows:

"Disability" or "disabled" means:

1. For persons other than pilots, co-pilots, and crew of an aircraft:

   i. If the Covered Person is eligible for the 24 Month Own Occupation Benefit, "Disability" or "Disabled" means during the Elimination Period and the next 24 months of Disability the Covered Person is unable to perform all of the material and substantial duties of his or her own occupation on an Active Employment basis because of an Injury or Sickness; and

   ii. After 24 months of benefits have been paid, the Covered Person is unable to perform, with reasonable continuity, all of the material and substantial duties of his or her own or any other occupation for which he or she is or becomes reasonably fitted by training, education, experience,

age and physical and mental capacity.

(Disability Risk Mgmt. Agreement, Annex A-1, § 2, att. as Ex. 2, Affid. of Jeffrey Hunter, Defs.' Mot. for Summ. J.)  Turner began receiving long term disability benefits effective March 12, 2000, because she was unable to perform the duties of her occupation.

> Liberty Life advised Turner by letter on November 6, 2001, as follows:
>
> The definition of disability states that for the first 24 months, disability will be evaluated relative to the employee's inability to perform the material and substantial duties of his occupation.
>
> After 24 months, disability will be evaluated relative to the employee's inability to perform the material and substantial duties of his own or any occupation for which he has training, education or experience.  Based on the change in definition and the medical and vocational information in our file, you qualify for continuation of benefits.
>
> Benefits will continue provided you are unable to perform the material and substantial duties of your own or any occupation for which you have training, education, and experience.  Your claim will be evaluated periodically to determine ongoing disability. . . .

(Letter from Liberty Life to Turner, dated Nov. 6, 2001, Ex. 7 to Hunter Affid., Mot. for Summ. J.)

By letter dated April 17, 2002, Liberty Life notified Turner that she was not eligible to continue receiving disability benefits beyond March 12, 2002, because she had the ability to perform other occupations.  As outlined in the letter, Liberty Life considered the following in deciding to discontinue her benefits:

1. Medical information from Dr. Hirsch which indicated that although Turner continued to complain of fatigue, her Hepatitis C was in remission;

2. Functional Capacity Evaluation, dated October 23, 2001;

3. Review of claim by Managed Care Nurse Services in February 2001;

5

4. Review of file by Saad Al-Shathir, M.D., Board Certified Physical Medicine and Rehabilitation, dated March 25, 2002; and

5. Transferrable Skills Analysis and Labor Market Survey, dated April 8, 2002.

Turner appealed this denial of benefits, presenting a letter written by her physician and a May 22, 2002 evaluation which found her disabled and unable to work. (Exh. "B" to Pl. Mtn Summ. Judg.). Liberty Life considered this new information, and advised Turner by letter dated January 2, 2003 that it found the information insufficient to reverse its decision under the terms of the Plan. (Exh. "D" to Pl. Mtn. Summ. Judg.).

In the meantime, Turner applied for social security disability benefits. The Social Security Administration found that Turner had "the residual functional capacity to do the following; perform the exertional demands of sedentary work...." (Exh. 6 to the Aff. of Jeffrey Hunter, attached to Def.'s Mtn. Summ. Judg., pg. 4). Nevertheless, Turner received an award of disability benefits because the Administration found that there were "no jobs existing in significant numbers which she can perform." *Id.*

Turner forwarded a copy of the Social Security Administration's determination to Liberty Life on January 19, 2004, (Exh. "E" to Pl. Mtn. Summ. Judg.), requesting another review of her file. She was notified by letter of the same date that her appeals process with Liberty under ERISA has been exhausted. *Id.* However, by earlier correspondence, Liberty had advised Turner that she had the right to take an appeal directly to Fresenius Medical Care. (Exh. "D" to Pl. Mtn. Summ. Judg., pg. 5). In January 2004, Turner submitted an appeal of her claim "asking [Fresenius] to overturn Liberty Mutual's decision based on the Social Security approval of disability." (Exh. "F" to Pl. Mtn. Summ. Judg., pg. 1). In its

letter notifying her of its decision, Fresenius noted that "the criteria for disability under the Fresenius Long-term disability plan are not the same as for Social Security disability" and concluded:

> upon review of: the timeliness of the appeal, the objective medical documentation available to Fresenius Medical Care - North America and the rationale for the Social Security decision, we find there is not sufficient supporting evidence or documentation to overturn Liberty Mutual's determination and extend long-term disability benefits beyond March 12, 2002.

*Id.* at pg. 2.

PLAINTIFF'S CLAIM:

Turner contends that Liberty Life abused its discretion in terminating her disability benefits. According to Turner, in reaching its decision, Liberty Life and Fresenius refused to consider the decision of the Social Security Administration that Turner is entitled to disability benefits. Turner also contends that Liberty Life refused to consider the opinion of Dr. Brunt, Turner's primary treating physician, who opined that Turner was totally disabled.

THE JUNE 6, 2002 LETTER:

Turner alleges that Liberty Life refused to consider the June 6, 2002 letter from her treating physician, Dr. Brunt, stating that she was totally disabled. (Exh. "B" to Pl. Mtn. Summ. Judg.) The record shows that Liberty Life did consider the letter from Turner's physician. (Exh. "D" to Pl. Mtn. Summ. Judg., pg. 4). However, Liberty Life also considered other information, including medical records from 2000 and 2001 showing that Turner's Hepatitis C was in remission, normal test results in 2000 and 2001, and an FCE indicating that Turner was not able to work primarily because of fatigue. This objective medical information was

reviewed by Liberty Life's "Managed Disability Services unit" in February 2002, which concluded that Turner's complaints of fatigue and memory loss were subjective in nature, any restriction or limitations would be expected to last only three to six months beyond remission in May 2000. The unit therefore recommended that a pain medicine and rehabilitation specialist review the file. (Exh. 4 to Def. Mtn. Summ. Judg., pg. 3).

Dr. Al-Shathir, a board certified physical medicine/rehabilitation physician, reviewed Turner's records one month later. He concluded:

> From a Physical Medicine and Rehabilitation perspective, based on the overall evidence in the medical records provided, Ms. Turner has a mild impairment based on the objective findings and testing. Although she self-reports chronic complaints of fatigue, the records do not support that she is jaundice, has ascites, or bleeding esophageal varices. Her lab result do not support severe liver disturbance. She has been documented to be in remission on various occasions.
>
> According to a disability questionnaire, dated January 18, 2001, Ms. Turner is able to bathe, dress, and feed herself. She is not using an assistive device. She is able to shop, perform limited cleaning, do laundry, drive, and paint. Although she states she requires assistance with some activities, she is able to change bed linens, dust and intermittently cook. She reports decreased ability to calculate and memory deficits, however, there has been no neuropsychological testing submitted to support true cognitive deficits.

Within the records there are numerous notations of complaints of chronic fatigue. There is also documentation of a diagnosis of chronic fatigue syndrome. However, a diagnosis of chronic fatigue syndrome can not be established in an individual who has an underlying disorder. Although fatigue is a symptom of hepatitis C, there has been no marked objective findings or deficits to support severe impairment.

Exh. 14 to the Aff. of Jeffrey Hunter, attached to Def. Mtn. Summ. Judg., pgs. 2-3.

Dr. Al-Shathir also made the following medical findings:

1) Ms. Turner is not physically limited since her symptoms are subjective with no documented neuromuscular disease, loss of range of motion or use of her limbs, or systemic failure.

8

      2) The objective medical findings do not support the assertion that she is unable to perform the physical demands of any job, even a sedentary job.

      3) The restrictions and/or limitations placed upon Ms. Turner's work activities by the attending physician are not reasonable and consistent with the objective medical findings as there is no documented muscle, nerve or joint pathology.

*Id.* at 3.

Thus, the opinion of Turner's attending physician was but one piece of evidence before Liberty Life. There was much more, including objective test results, for Liberty Life to consider, and Liberty Life was not required to give special deference to the attending physician's opinion. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822 (2003). Contrary to Turner's arguments, whether Liberty Life should have accorded the physician's opinion more weight is not a determination which can properly be made by this Court. *Schadler v. Anthem Life Ins. Co.,* 147 F.3d 388, 395 (5th Cir.1998). As detailed above, there is substantial evidence in the record which supports Liberty Life's decision to deny benefits at the time of the appeal, and the decision was not arbitrary or capricious.

THE SOCIAL SECURITY ADMINISTRATION DECISION:

Turner further alleges that Fresenius refused to consider the Social Security Administration's decision of disability when it reviewed Liberty Life's decision to discontinue benefits under the Plan. Once again, the record shows that this information was considered. (Exh. "F" to Pl. Mtn. Summ. Judg.) It was simply insufficient to grant Turner the relief she requested, in large part because the Social Security decision actually supported Liberty Life's conclusion that Plaintiff could perform work. *See id.* and Exh. "C" to Pl. Mtn. Summ. Judg., pg. 4. The Court therefore concludes that there is substantial evidence in the record which

9

supports Fresenius's decision to uphold the denial of benefits, and the decision was not arbitrary or capricious.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment filed by the Defendants Fresenius Medical Care North America ("Fresenius") and Liberty Assurance Company of Boston ("Liberty Life") [16] is **GRANTED**. Plaintiff's claims against the Defendants are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 22nd day of September, 2006.

s/ *Louis Guirola, Jr.*<br>LOUIS GUIROLA, JR.<br>UNITED STATES DISTRICT JUDGE